UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEFFREY VANDERMAST and BRIDGET VANDERMAST, Individually and as Husband and Wife, on behalf of themselves and all persons similarly situated,

Plaintiffs,

v.

WALL & ASSOCIATES, INC.,

Defendant.

**REPORT AND RECOMMENDATION**

20-CV-00736-JLS-JJM

---

Plaintiffs Jeffrey and Bridget Vandermast seek various forms of relief on behalf of themselves, and others similarly situated, arising from an October 2016 agreement with defendant Wall & Associates, Inc. ("Wall") for tax relief services. Amended Class Action Complaint [1-8].[1] Before the court is Wall's motion to dismiss the action based upon a forum selection clause in the agreement [7], which has been referred to me by District Judge John Sinatra for initial consideration [2].[2] Having reviewed the parties' submissions [7, 11, 12, 15, 19] and heard oral argument on August 20, 2020 [20], I recommend that the motion be granted.

---

1 Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

2 "[T]here is no specific Federal Rule of Civil Procedure designed to request dismissal of a suit based upon a valid forum-selection clause." Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Manufacturers Inc., 952 F. Supp. 2d 542, 567 (S.D.N.Y. 2013).

## BACKGROUND

Wall allegedly offers tax relief services nationwide. Amended Class Action Complaint [1-8], ¶11. In need of such services, on October 26, 2016 plaintiffs met with Wall's representative, Burney Gasque III, at Wall's office in Syracuse, New York. Id., ¶¶57, 58. At that meeting, plaintiff Jeffrey Vandermast executed an agreement [7-4][3] for Wall's services in connection with plaintiffs' state and federal taxes for the years 2000-2015. [1-8], ¶¶62, 89; [7-4], p. 11 of 21 (CM/ECF pagination), ¶3. The agreement required plaintiffs to pay an initial fee of $30,000, as well as $2,000 per month for additional services. [1-8], ¶62; [7-4], p. 10 of 21 (CM/ECF pagination), ¶1. Section 14 of the agreement provided as follows: "This agreement is deemed entered into in Virginia and is subject to the laws of Virginia. Jurisdiction for any action . . . to enforce this agreement, or concerning services under this agreement, or concerning charges under this agreement, shall be exclusively in the Virginia courts located in Fairfax County, Virginia." [7-4], p. 12 of 21 (CM/ECF pagination).[4]

After paying Wall the sum of $23,820, on October 31, 2016 plaintiffs purported to terminate the agreement and demanded that Wall refund their payments. Amended Class Action Complaint [1-8], ¶¶87, 93.

On November 22, 2016, plaintiffs commenced an action against Wall in State of New York Supreme Court, County of Niagara. Joyce Declaration [7-2], ¶2. On July 11, 2017 plaintiffs filed an Amended Complaint in that action [1-3], asserting causes of action for money had and received, fraud, conversion, and unjust enrichment. In response, Wall moved to dismiss

---

3 Although plaintiff Bridget Vandermast never signed the agreement, the parties agreed at oral argument that her failure to do so is not relevant to the pending motion.

4 Plaintiffs note that since there are no federal courts located in Fairfax County, the clause refers only to the state courts of Virginia. Plaintiffs' Memorandum of Law [11], p. 4.

the Amended Complaint based, in part, on the forum selection clause of its agreement with plaintiffs. Joyce Declaration [7-2], ¶7. By Decision and Order dated September 10, 2018, State of New York Supreme Court Justice Frank Caruso granted Wall's motion and dismissed the action, reasoning that:

> "Since the plaintiffs fail to plead fraud with any particularity, and make no case for why the forum listed in the forum selection clause would be so difficult as to deny their day in court, the Court concludes that the forum selection clause should be enforced and that this matter should be handled in the Virginia Courts. Therefore, the defendant's motion is granted and the case is dismissed on the grounds that a valid and enforceable forum selection clause precludes the commencement of the action in the State of New York."

Decision and Order [7-5], pp. 5-6 of 6 (CM/ECF pagination).

Plaintiffs did not appeal the dismissal of that action. Joyce Declaration [7-2], ¶10. Instead, on April 25, 2019 they commenced a second action in State of New York Supreme Court, County of Niagara. Their Complaint in that action [1-3] added more specific allegations concerning Wall's alleged fraud, but otherwise contained the same four causes of action as the Amended Complaint in the previously dismissed action.

In moving to dismiss the second action, Wall argued that the court had already determined in the original action that a "valid and enforceable forum selection clause precludes the commencement of the action in the State of New York". *See* Notarius Affirmation in Support of the Motion to Dismiss [11-2]. At the oral argument of that motion on October 17, 2019, Justice Caruso disagreed with Wall, stating that "my original ruling dealt with one issue but I don't believe that rose to the level of a res judicata or collateral estoppel because I never really got into the merits. I just said that the complaint was insufficient. So they had a right to bring an amended one". Transcript of the October 17, 2019 proceeding [11-4], p. 14. On April 29, 2020, Justice Caruso entered an Order [11-3] denying Wall's dismissal motion.

On May 19, 2020, plaintiffs filed an Amended Class Action Complaint [1-8] containing, for the first time, class allegations and a cause of action for deceptive acts and practices in violation of New York State General Business Law ("GBL") §349. Based on that pleading, Wall removed the action to this court on the grounds of diversity jurisdiction pursuant to 28 U.S.C. §1332,[5] and under the Class Action Fairness Act of 2005. *See* Notice of Removal [1]. In moving for dismissal of the Amended Class Action Complaint, Wall makes several arguments (Wall's Memorandum of Law [7-1]), each of which I will address.

## DISCUSSION

### A. Does Collateral Estoppel Apply?

Wall argues that plaintiffs are collaterally estopped from contesting the validity and enforceability of the forum selection clause. Wall's Memorandum of Law [7-1], Point II. Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim". Taylor v. Sturgell, 553 U.S. 880, 892 (2008). The doctrine applies when "'(1) an identical issue was necessarily decided in the prior action and is decisive of the present action, and (2) there was a full and fair opportunity to contest the decision in the prior action'." Wall's Memorandum of Law [7-1], p. 17 (*quoting* Duran v. County of Monroe, 2019 WL 6464279, *3 (W.D.N.Y. 2019)).

Plaintiffs respond that "Justice Caruso specifically stated on the record that the Court's prior ruling was not on the merits and has no preclusive effect". Plaintiffs' Memorandum

5 The Notice of Removal [1] explains that while diversity of citizenship previously existed, the amount in controversy had not previously met the threshold required for jurisdiction. Id., ¶7.

of Law [11], p. 11. However, plaintiffs recognize that following removal of a state court action to federal court, "orders issued by the state court in the case 'are treated as though they had been entered by the federal court'". Id. (*quoting* Sunset Homeowners Association v. DiFrancesco, 2019 WL 1597497, *7 (W.D.N.Y. 2019)). Therefore, Justice Caruso's denial of Wall's motion to dismiss the second state court action is an interlocutory pre-trial order which is "subject to modification by the district judge at any time prior to final judgment". In re United States, 733 F.2d 10, 13 (2d Cir. 1984). *See also* Fed. R. Civ. P. ("Rule") 54(b) ("any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

Although plaintiffs argue that Justice Caruso's denial of Wall's motion to dismiss "is the law of the case which should be adhered to" (plaintiffs' Memorandum of Law [11], p. 11), "the law of the case doctrine does not limit the power of a court, but merely expresses the practice of courts generally to refuse to reopen what has been decided". North River Insurance Co. v. Philadelphia Reinsurance Corp., 63 F.3d 160, 164 (2d Cir. 1995). Therefore, "[i]f the federal court [is] satisfied that it, or its predecessor the state court, had made a mistake, it ha[s] power to reopen the matter". Pacific Employers Insurance Co. v. Sav-a-Lot of Winchester, 291 F.3d 392, 398 (6th Cir. 2002), *quoting* Remington v. Central Pacific Railroad Co., 198 U.S. 95, 99-100 (1905).

Justice Caruso's oral comments cannot undo the plain language and effect of his September 10, 2018 Decision and Order in the original state court action, which became a final judgment when it was not appealed. "A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the

oral testimony of a judge . . . of what he had in mind at the time of the decision." Fayerweather v. Ritch, 195 U.S. 276, 307 (1904).[6] To hold otherwise would constitute an improper *de facto* review of the final judgment in the original state court action. *See* District Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983) ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings").

Plaintiffs further argue that "[i]n New York, a dismissal of a complaint for failure to state a cause of action is 'not on the merits' and a second complaint which corrects the pleading . . . is not barred by the doctrine of *res judicata*". Plaintiffs' Memorandum of Law [11], p. 11. However, as Wall notes, "a determination on the merits - although required for *res judicata* - is ***not*** an element of collateral estoppel". Wall's Reply Brief [12], p. 9 (emphasis in original). In any event, Justice Caruso's determination that the forum selection clause is "valid and enforceable" *did* decide that issue "on the merits". *See* Offshore Sportswear, Inc. v. Vuarnet International, B.V., 114 F.3d 848, 851 (9th Cir. 1997) (since "a dismissal to enforce a forum selection clause is not a determination on the merits of any cause of action, it is appropriately 'without prejudice' so that the merits can be litigated elsewhere. But it is a determination on the merits of the applicability, and enforceability, of the clause itself").

Although plaintiffs now seek to offer additional arguments to defeat the enforceability of the forum selection clause, those arguments could have been asserted in their original state court action, and therefore will not be considered now. "A party cannot avoid collateral estoppel on an issue merely by asserting additional facts . . . that it could have argued

---

6 *See also* Rubens v. Mason, 387 F.3d 183, 191 (2d Cir. 2004); United States v. Zipkin, 729 F.2d 384, 389 (6th Cir. 1984) ("[a]n order entered by a judge should speak for itself and not be varied by parol testimony as to what was meant by its provisions"); Stein v. Professional Center, S.A., 666 So. 2d 264, 266 (Fla. Dist. Ct. App. 1996) ("the finality and integrity of judicial orders would be undermined if such orders could later be modified or supplemented by the oral testimony of the judge who entered it. The meaning of a judicial order must be ascertained from the language employed in the order itself").

in the prior action." Fido's Fences, Inc. v. Radio Systems Corp., 999 F. Supp. 2d 442, 458 (E.D.N.Y. 2014). Accordingly, I conclude that plaintiffs are collaterally estopped from contesting the validity of the forum selection clause.

In any event, for the reasons discussed below, the forum selection clause is enforceable even absent collateral estoppel.

**B. Is the Forum Selection Clause Enforceable Absent Collateral Estoppel?**

"[F]orum selection and choice of law clauses are unreasonable (1) if their incorporation into the agreement was the result of fraud or overreaching . . . (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum . . . (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy . . . or (4) if the clauses contravene a strong public policy of the forum state." Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993).

Plaintiffs argue that the forum selection clause is unenforceable under the second, third and fourth Roby factors. As to the second factor (grave inconvenience), plaintiffs contend that litigating this case in Fairfax County, Virginia - "the epicenter of the COVID-19 pandemic within Virginia" - would "expose the Plaintiffs to dangerous levels of COVID-19 infections in that state", and that their return to New York "would perpetuate the COVID-19 hardship". Plaintiffs' Memorandum of Law [11], pp. 8-9.

However, COVID-19 was unheard of when the agreement was executed, and "[t]he fairness of a contract, like all its other qualities, must be judged of at the time it was

entered into". Boyd's Sureties v. Oglesby, 64 Va. 674, 684 (1873).[7] Moreover, "modern technologies make the location of witnesses and evidence less important to the *forum non conveniens* analysis". Petersen Energia Inversora S.A.U. v. Argentine Republic, 2020 WL 3034824, *11 (S.D.N.Y. 2020). "Indeed, sure to be one of the enduring lessons of the ongoing COVID-19 pandemic is that we can accomplish far more remotely than we had assumed previously." Id.

As Wall notes, the pandemic's geographic impact is fluid and unpredictable. For example, it points to the fact that when this case was removed on June 16, 2020, the daily number of COVID-19 cases was higher in New York than Virginia. Id. Notwithstanding any current differences in the COVID-19 rates between the two locales, plaintiffs fail to demonstrate that the courts "are not experiencing the same challenges and associated delays". Halcyon Syndicate Ltd., LLC v. Graham Beck Enterprises (PTY), Ltd., 2020 WL 4051865, *22 (N.D. Cal. 2020). Therefore, I conclude that enforcement of the forum selection clause would not pose a grave inconvenience to plaintiffs.

With respect to the third Roby factor (fundamental unfairness of the chosen law), plaintiffs argue that the forum selection clause's designation of Virginia law "deprives [them] of the class action remedy". Plaintiffs' Memorandum of Law [11], pp. 6-7. However, "the prospect of a lesser recovery does not justify refusing to dismiss on the ground of *forum non conveniens*". Alcoa S. S. Co. v. M/V Nordic Regent, 654 F.2d 147, 159 (2d Cir. 1980). "To prevail on fundamental unfairness grounds, Plaintiff must show that the application of the

---

7 "[T]hough it may be stated generally that a contract is to be considered and determined under the law of the state where it was made, this rule is of no force in a case where it can be fairly said that the parties at the time of its execution manifested an intention that it should be governed by the laws of another state." Stumpf v. Hallahan, 101 A.D. 383, 386, 91 N.Y.S. 1062, 1062 (1st Dept. 1905), aff'd, 185 N.Y. 550 (1906).

foreign law presents a danger that it will be deprived of *any* remedy or treated unfairly." Starkey v. Gap Adventures, Inc., 2014 WL 1271233, *3 (S.D.N.Y. 2014), aff'd, 796 F.3d 193 (2d Cir. 2015) (emphasis in original). *See also* Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Manufacturers, Inc., 952 F. Supp. 2d 542, 565 (S.D.N.Y. 2013) ("the potential unavailability of certain claims, or even the entire action, in the selected forum is insufficient to make the forum-selection clause unreasonable or unjust").

Litigating this case in Virginia state court will not leave plaintiffs without a remedy. In fact, in addition to plaintiffs still having the ability to maintain their individual claims, "the Commonwealth of Virginia . . . has practices and procedures available that parallel those related to federal class actions". Olde Homestead Golf Club v. Electronic Transaction Systems Corporation, 714 Fed. App'x 186, 189 (3d Cir. 2017). Moreover, as Wall notes, the importance which plaintiffs now place on pursuing this case as a consumer class action is difficult to reconcile with the fact that it took them more than three years to assert class allegations. Wall's Reply Brief [12], pp. 3-4.[8]

As to the fourth Roby factor (public policy), plaintiffs argue that New York has a strong public policy favoring consumer class actions. Plaintiffs' Memorandum of Law [11], pp. 7-8. That may be so, but "New York's interest in protecting its consumers and businesses does not override its policy of enforcing forum selection clauses". Brodsky v. Match.com LLC, 2009 WL 3490277, *4 (S.D.N.Y. 2009). Under New York law "'a contractual proscription against class actions is neither unconscionable nor violative of public policy'". Horton v. Dow Jones &

---

8 It is difficult to see why this was not earlier brought as a class action, when plaintiffs allege that shortly after Jeffrey Vandermast signed the Agreement, he located "several scathing reviews" evidencing Wall's "fraudulent tactics on a nationwide scale, affecting numerous consumers similarly situated to the representative Plaintiffs". Amended Class Action Complaint [1-8], ¶¶91-92.

Co., Inc., 804 Fed. App'x 81, 84 (2d Cir. 2020) (Summary Order) (*quoting* Tsadilas v. Providian National Bank, 13 A.D.3d 190, 191 (1st Dep't 2004)).

Plaintiff's reliance upon Doe 1 v. AOL LLC, 552 F.3d 1077 (9th Cir. 2009), does not compel a different conclusion. That decision is not controlling, and addressed California public policy which, unlike that of New York, heavily disfavors class action waivers. *See* Doe 1, 552 F.3d at 1084 ("California public policy is violated by forcing such plaintiffs to waive their rights to a class action and remedies under California consumer law").

Therefore, even absent the application of collateral estoppel, I find no basis to conclude that the forum selection clause is unenforceable.

**C. Do Any Claims Fall Outside of the Scope of the Forum Selection Clause?**

"The Second Circuit has endorsed an expansive reading of the scope of forum-selection clauses, in keeping with the policy favoring their use." Bent v. Zounds Hearing Franchising, LLC, 2015 WL 7721838, *6 (S.D.N.Y. 2015). Hence, "as a general matter, a forum selection clause found in a contract may still be enforced when the action involves claims other than breach of contract". J.B. Harris, Inc. v. Razei Bar Industries, Ltd., 37 F. Supp. 2d 186, 192 (E.D.N.Y. 1998), aff'd, 181 F.3d 82 (2d Cir. 1999). *See also* Cfirstclass Corp. v. Silverjet PLC, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008) ("[t]he scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it"). However, the breadth of the claims encompassed by the forum selection clause still depends "on what the specific clause at issue says". Phillips v. Audio Active Ltd., 494 F.3d 378, 389 (2d Cir. 2007) (emphasis omitted). With these principles in mind, I will address each of plaintiffs' claims in view of the forum selection clause.

**1. Tort Claims**

"A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship . . . . Thus . . . a contractually-based forum selection clause will . . . encompass tort claims if the tort claims 'ultimately depend on the existence of a contractual relationship' between the parties . . . or if 'resolution of the claims relates to interpretation of the contract,' . . . or if the tort claims 'involv[e] the same operative facts as a parallel claim for breach of contract'". Direct Mail Product Services Ltd. v. MBNA Corp., 2000 WL 1277597, *6 (S.D.N.Y. 2000). *See also* Montoya v. Cousins Chanos Casino, LLC, 2012 WL 118475, *5 (Sup. Ct., New York County 2012) ("[b]ecause of the strong public policy favoring enforcement of forum selection clauses, courts have construed these clauses broadly to encompass tort claims brought in relation to the contract and/or which arise out of the business relationship").

Here, the contractually-based forum selection clause covers claims "to enforce" the agreement, as well as claims "concerning services" or "charges" under the agreement. [7-4], p. 12 of 21 (CM/ECF pagination), ¶14. That language is sufficiently broad to cover plaintiffs' fraud claim, which includes Wall's alleged misrepresentations concerning the services that were to be provided under the agreement. *See, e.g.*, Amended Class Action Complaint [1-8], ¶140 ("[a]ll the representations made to Plaintiffs by defendant about the tax services to be provided . . . were false"). *See* Martin v. Creative Management Group, Inc., 2010 WL 2629580, *2 (S.D.N.Y. 2010) ("[e]ach of plaintiff's claims - breach of contract, promissory estoppel, unjust enrichment, fraudulent inducement, New York labor law violations, and conversion - arises from the plaintiff's relationship with the defendants, as governed by the Agreement. Thus,

all of plaintiff's claims are fairly classified as part of the 'subject matter' of the Agreement and, therefore, are subject to the forum selection clause").

Plaintiffs point to my Report and Recommendation in Luvata Buffalo, Inc. v. MOL Mitsui O.S.K. Lines, Ltd., 2010 WL 5779411 (W.D.N.Y. 2010), adopted, 2011 WL 500069 (W.D.N.Y. 2011), holding that a fraud claim fell outside of a forum selection clause in a bill of lading that applied to "any action against the Carrier thereunder" (*i.e.*, under the bill of lading). However, Luvata is distinguishable. Not only was the forum selection clause narrower than the clause at issue here, but the fraud claim in that case was based on allegations that the injury was caused by "'the creation or acceptance of fraudulent or false shipping documents and/or labels that *were different and separate from the Bill of Lading*'" Id., *4 (emphasis added).

The forum selection clause also encompasses plaintiffs' claim for conversion. First, because the payment that plaintiffs made to Wall (*i.e.*, monies allegedly converted) were charges under the agreement, the conversion claim is one "concerning charges under" the Agreement. *See* Overseas Ventures, LLC v. ROW Management, Ltd., Inc., 2012 WL 5363782, *7 (S.D.N.Y. 2012) ("[t]he conversion claim . . . centrally turns on the transaction embodied in the Residence Agreement"). The conversion claim also constitutes a claim to enforce the agreement, which permitted Wall to retain only "earned payments". *See* Agreement [7-4], p. 11 of 21 (CM/ECF), ¶4 ("[i]n the event any services under this contract are terminated, [Wall] shall be entitled to all earned payments"); Amended Class Action Complaint [1-8], ¶94 (Wall "had done no work to resolve the representative Plaintiffs' tax issues"). Further, the conversion claim concerns services under the Agreement, since it alleges that Wall "refuses to return the money *or perform its obligations under the form 'Agreement'*". Amended Class Action Complaint [1-8], ¶173 (emphasis added).

### 2. GBL §349 Claim

Since plaintiffs concede that their GBL §349 claim is "based on the same deceptive acts which form the basis of [their] fraud claim" (plaintiffs' Memorandum of Law [11], p. 10), I conclude that this claim is likewise subject to the forum selection clause. *See* Weingrad v. Telepathy, Inc., 2005 WL 2990645, *2 (S.D N.Y. 2005) (forum selection clause stating that "any disputes hereunder including disputes related to the services provided" was enforceable as to all claims, including a GBL §349 claim).[9]

## D. Did Wall Waive its Right to Enforce the Forum Selection Clause?

Plaintiffs argue that Wall waived its right to enforce the forum selection clause "when it removed the case to this Court and asserted that the Court had subject matter jurisdiction due to the status of this case as a class action, and that venue was proper in this Court". Plaintiffs' Supplemental Memorandum of Law [15], p. 3.

I disagree. "It is well settled that the filing of a removal petition in a diversity action, without more, does not waive the right to object in federal court to the state court venue." Lambert v. Kysar, 983 F.2d 1110, 1113 n. 2 (1st Cir. 1993). *See also* Mckinnis v. Digital Intelligence Systems Corp., 2015 WL 7424778, *3 (N.D. Tex. 2015) ("DISYS's removal of this action to this Court from state court does not prohibit DISYS from then invoking a forum-

---

[9] Although not raised by plaintiffs, I note that plaintiffs' GBL §349 claim is not foreclosed by enforcement of the forum selection clause. "[C]ourts outside New York have presided over actions involving claims of deceptive business practices occurring in New York pursuant to New York's GBL § 349. . . . But whether the GBL § 349 claim can be prosecuted with effect in [another state] does not flow from the forum selection clause but from the choice of law provision, the scope of which should be decided in [the selected forum]". USA India Export-Import, Inc. v. Coca-Cola Refreshments USA, Inc., 2015 WL 442028, *10 (Westchester Cty. Sup. Ct. 2015).

selection clause"). As the Second Circuit has recognized, "[t]he removal *must* be 'into the district court to be held in the district where such suit is pending.' No choice is possible and for that reasoning in respect to venue can be waived by the defendant in a removed action." Moss v. Atlantic Coast Line R. Co., 157 F.2d 1005, 1006 (2d Cir. 1946) (emphasis added). *See also* PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 72 (2d Cir. 1998) ("[a] party who removes an action from state to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action").

Moreover, by removing the case to this court, Wall recognized only that it had been *filed* as a class action (*see* 28 U.S.C. §1332(d)(1)(B)), and did not thereby concede that it *was* properly a class action.

## CONCLUSION

For these reasons, I recommend that Wall's motion to dismiss [7] be granted. Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by September 15, 2020. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: September 1, 2020

JEREMIAH J. MCCARTHY
United States Magistrate Judge